IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ALEX KEDAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-2113-CSB-EIL |
| | ) |
| ILLINOIS DEPARTMENT OF TRANSPORTATION, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF JASON SMITH

I, Jason Smith, certify under penalty of perjury that the statements set forth in this affidavit are true and correct, I have direct and personal knowledge of the facts stated herein, I am over 21 years of age and of sound mind and body, and if called to testify, I would testify as follows:

1. I am currently employed with the Illinois Department of Transportation as Supervising Construction Field Engineer (Civil Engineer V). I assumed this position in an acting capacity in December 2015 and then permanently assumed it in January 2017.

2. In 2017, I assigned Alex Kedas the most complex job in the region, being Contract 70A12, I-57 Resurfacing, which was valued at $14.3 million. The next closest project in complexity and dollar amount was in the Bloomington Field Area and was $6.4 million.

3. During this project, Alex Kedas authorized $100,000 in patching without authorization from me and when he only has authority for $20,000 according to Construction Memorandum 04.

4. The Construction Field Engineer is only approved to authorize up to $40,000, so this work exceeded my approval level as well, and would have required Ken Crawford's approval as Project Implementation Engineer/acting Construction Engineer.

5.  The union contract (Teamsters 916) affords management the right to assign employees as they see fit. Management uses this right to best fit Resident Engineers and Technicians with the available construction projects in their respective field areas that will best suit the State of Illinois and the taxpayers.

6.  Neither the union contract nor the job description affords a Senior Resident the ability to choose their own projects. That responsibility lies with the Construction Field Engineer per the union contract.

7.  Up until 2018, the Senior Resident Engineer job description afforded the employee one project and $2 million worth of work. It was revised after 2018 and was then based on district program.

8.  Generally, under my supervision, Alex Kedas had at least one project and at least $2 million worth of projects.

9.  The prestige and importance of a job assignment is not determined by the monetary value of the job, but rather the complexity of the job.

10. Alex Kedas habitually questioned decisions made by supervisors (Jason Smith, Mike Carnahan, Ken Crawford, and Kensil Garnett) related to job assignments, which included telling his supervisor that the assignments were incorrect and telling supervisors who, in his mind, should be running jobs, which was most often himself.

11. In my position, I do not have the authority to hire, terminate, or promote employees.

12. In my position, I only have the ability to recommend discipline to personnel staff.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## PURSUANT TO 28 U.S.C. 1746(2)

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23 2022.

By: _____
Jason Smith