# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

September 2, 2025

To:  Shig Yasunaga
     UNITED STATES DISTRICT COURT
     Central District of Illinois
     U.S. Courthouse
     Urbana, IL 61802-3369

|  |  |
|---|---|
| No. 22-2775 | ALEX KEDAS,<br>        Plaintiff - Appellant<br><br>v.<br><br>ILLINOIS DEPARTMENT OF TRANSPORTATION,<br>        Defendant - Appellee |

| Originating Case Information: |
|---|
| District Court No: 2:19-cv-02113-CSB-EIL |
| Central District of Illinois |
| District Judge Colin S. Bruce |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                    No record to be returned

form name: **c7_Mandate**    (form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

August 11, 2025



CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

### Before

DAVID F. HAMILTON, *Circuit Judge*
THOMAS L. KIRSCH II, *Circuit Judge*
DORIS L. PRYOR, *Circuit Judge*

| | |
|---|---|
| No. 22-2775 | ALEX KEDAS,<br>　　　　　Plaintiff - Appellant<br><br>v.<br><br>ILLINOIS DEPARTMENT OF TRANSPORTATION,<br>　　　　　Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 2:19-cv-02113-CSB-EIL<br>Central District of Illinois<br>District Judge Colin S. Bruce | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

*Christopher Conway*

Clerk of Court

form name: **c7_FinalJudgment**　　(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2775

ALEX KEDAS,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF TRANSPORTATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois
No. 19-cv-02113 — **Colin S. Bruce**, *Judge.*

———————————

ARGUED NOVEMBER 30, 2023 — DECIDED AUGUST 11, 2025

———————————

Before HAMILTON, KIRSCH, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Alex Kedas sued his employer, the Illinois Department of Transportation (IDOT), under Title VII of the Civil Rights Act of 1964, alleging retaliation after he complained about gender discrimination in the workplace. IDOT filed a motion for summary judgment, which the district court granted in part, with Kedas's remaining claims proceeding to trial. The jury found Kedas had successfully demonstrated that IDOT had engaged in retaliatory behavior

but chose to award him no monetary award because he had not suffered any mental or emotional pain. Kedas appeals, challenging only the district court's grant of partial summary judgment, which limited the types of alleged adverse employment actions Kedas could present at trial. For the reasons discussed below, we affirm.

## I. BACKGROUND

"Because [Kedas] appeals from a grant of summary judgment, we must view the evidence in the light reasonably most favorable to him, as the non-moving party, and we must give him the benefit of conflicts in the evidence." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 898 (7th Cir. 2018).

### A. Kedas's Employment History

Kedas worked with the Illinois Department of Transportation from 1990 to 2021—over thirty years. He held various titles over that time, including Inspector, Assistant Resident Engineer, and Senior Resident Engineer. For the majority of that time, from April 1998 until his resignation in March 2021, Kedas worked as a senior resident engineer.

IDOT required senior resident engineers to have extensive engineering knowledge and practical construction experience. As a senior resident engineer, Kedas was responsible for supervising field activities for complex highway projects within IDOT District 5, which is comprised of seven counties in Central Illinois and located in IDOT Region 3. Until May 2018, IDOT assigned senior resident engineers construction projects valued between $2 million and $20 million.

Over his career, Kedas reported to various supervisors: Michael Carnahan, from March 2008 until December 2014; Jim Crawford, from December 2014 until March 2016; and Jason

No. 22-2775                                                              3

Smith, from March 2016 until March 2021, when Kedas resigned. At the time of Kedas's resignation, District 5 was overseen by Project Implementation Engineer Kenneth Crawford, who reported directly to Region 3 Engineer Kensil Garnett.

Prior to his resignation from IDOT, Kedas had developed a unique working relationship with both his direct supervisors and management. Kedas was known for "habitually" questioning decisions made by supervisors including job assignments. Kedas's behavior was so pervasive that in 2014, Garnett ordered Kedas to undergo a "fitness to work" evaluation. Though Kedas was found fit to continuing working for IDOT, this behavior continued when Smith became Kedas's supervisor.

In February 2016, Kedas took issue with a job assignment that Carnahan, his previous supervisor, had given to Andrea Childers, a resident technician, also in District 5. Unlike senior resident engineers, IDOT did not require resident technicians to have an engineering background. Also, IDOT limited their technicians to highway improvement projects ranging in value from $200,000 to $30 million. Kedas believed that he was more qualified than Childers but that she was receiving better assignments. Kedas expressed his concerns to Project Implementation Engineer Crawford. He also expressed his belief that Carnahan was favoring Childers because of her gender. In April 2016, having not received a proper response to his complaints of discrimination, Kedas reported these same concerns to Tim Morris, an attorney with IDOT's Chief Counsel and Chief Ethics Office.

This time, Kedas's concerns were addressed by IDOT Region 3 Engineer Garnett. On June 1, 2016, Garnett sent Kedas a memorandum explaining that Kedas's April 2016 complaint

regarding the alleged Carnahan–Childers relationship was in-appropriate, and that further counseling would be forthcoming. Garnett also notified Kedas that the memorandum, although not a disciplinary action, would be attached to Kedas's upcoming performance evaluation.

A man of his word, Garnett attached the memorandum to Kedas's June 2016 performance review. Kedas scored high in various categories, but his supervisors marked him at 1 out of 5 for his ability to accept supervision and his ability to support personnel and resolve conflicts. Overall, Kedas's performance rating was 76%, placing him below the threshold marker for receiving a yearly merit-based bonus.[1] Kedas did not receive any merit-based bonuses between 2016 and 2019.

**B. Kedas's Job Assignments in 2017 and 2018**

Despite his poor evaluation, in 2017, IDOT assigned Kedas a construction project valued at $14.3 million—the largest and most complex job in the Department at the time. While working on this project, Kedas approved $100,000 for patching work, an amount exceeding Kedas's $20,000 spending limit. Kedas chose to disregard his supervisors' spending restriction because he believed they had erred in their allocation of funds.

In response, the following year, Kedas's supervisors decided to severely limit his construction assignments without any explanation. Upon receiving his assignments for the 2018 construction year in February 2018, Kedas realized that his

---

[1] The counseling memorandum also explained that the agreement between Kedas's union and IDOT indicated that any discipline would follow a progression beginning with an oral reprimand and extending to a written reprimand, suspension, and potential discharge.

assigned projects fell below the $2 million floor authorized for
senior resident engineers. Childers, on the other hand, had
been assigned a $15 million construction project. Kedas
viewed this as retaliation for his complaints of discrimination.

Upon raising this concern, Kedas received another memo-
randum from Region 3 Engineer Garnett on March 21, 2018.
The notice required Kedas to attend a pre-disciplinary meet-
ing to discuss his alleged insubordination, disruptive con-
duct, and failure to follow process. After receiving no re-
sponse from IDOT's Chief Legal Counsel's Office and Chief
Ethics Office, Kedas, on April 11, 2018, filed a complaint with
the Equal Employment Opportunity Commission alleging
gender discrimination. After receiving his right-to-sue letter,
Kedas filed this action in federal court alleging retaliation.
Shortly after, in May 2018, IDOT "clarifi[ed]" the project value
of job assignments for senior resident engineers would vary.

Later that same year, Smith, Kedas's supervisor, requested
that Kedas be reassigned to a different district because Kedas
had become "unsuperviseable [sic] in his current state." Smith
stated "the cancer" was spreading to other employees in the
district.

Finding the work environment detrimental to his health
and welfare, Kedas resigned from IDOT in March 2021.

## C. Procedural History

On April 30, 2019, Kedas filed this suit against IDOT
bringing a claim of retaliation for reporting gender discrimi-
nation, in violation of Title VII of the Civil Rights Act of 1964.
*See* 42 U.S.C. § 2000e-3(a). In his later amended complaint,
Kedas alleged various adverse actions that IDOT engaged in
following his April 2016 email complaint. These actions

included retaliatory disciplinary sanctions, poor performance appraisals, false claims of insubordination, and constructive discharge. According to Kedas, all of this led him to being constructively discharged from IDOT.

IDOT filed a motion for summary judgment, which was later granted in part by the district court. The judge found Kedas's June 2016 counseling memorandum; June 2016 negative performance evaluation and denial of merit-based bonus; and February 2018 assignment of projects below the $2 million threshold constituted materially adverse employment actions, but the remaining actions by IDOT did not. Next, the court analyzed whether Kedas was able to demonstrate a "causal link" between his protected activity in April 2016 and the identified materially adverse employment actions. Finding no link between Kedas's protected activity in April 2016 and IDOT's decision to assign him projects in February 2018 totaling less than $2 million, the district court granted IDOT summary judgment in part. But because Kedas provided sufficient evidence for a reasonable jury to infer a causal link between the April 2016 report and the June 2016 counseling memorandum and poor performance review, the district court permitted these adverse employment actions to proceed to trial.

At trial, the jury concluded that Kedas had successfully demonstrated that IDOT retaliated against him for filing his April 2016 gender discrimination complaint by issuing the June 2016 disciplinary counseling memorandum. On Kedas's claim that his June 2016 performance evaluation was downgraded in retaliation for his complaint of gender discrimination, the jury found in favor of IDOT and against Kedas. Finding Kedas had not suffered any mental or emotional pain as a

No. 22-2775                                                                7

result of retaliation, the jury did not award Kedas any mone-
tary compensation.

Kedas now appeals, challenging only two of the district
court's summary judgment determinations. First, Kedas
maintains that the district court erred in determining that he
had not presented sufficient evidence of constructive dis-
charge. He also finds fault in the district judge's conclusion
that a reasonable jury could not find a causal connection be-
tween the February 2018 job assignments and Kedas's April
2016 email complaint.

## II. ANALYSIS

On appeal, Kedas argues that the district court prevented
him from demonstrating to the jury IDOT's allegedly contin-
ual pattern of retaliation. "We review de novo a district
court's ruling on a motion for summary judgment." *Finite
Res., Ltd. v. DTE Methane Res., LLC*, 44 F.4th 680, 683 (7th Cir.
2022). Summary judgment is proper when the moving party
shows that there is no genuine dispute of material fact and the
movant is entitled to judgment as a matter of law. *Equal Emp.
Opportunity Comm'n v. Vill. At Hamilton Pointe LLC*, 102 F.4th
387, 400 (7th Cir. 2024) (citing FED R. CIV. P. 56(a)).

### A. Retaliation in the Form of Constructive Discharge

Kedas maintains that the district court erred in finding he
had failed to demonstrate that IDOT constructively dis-
charged him in retaliation for his complaints of gender dis-
crimination. Title VII prohibits employers from retaliating
against employees for complaining about unlawful employ-
ment practices. *See* 42 U.S.C. § 2000e-3(a); *Burlington Northern
& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). To survive
summary judgment under this theory of retaliation, Kedas

needed to offer evidence from which a reasonable jury could find that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there's a causal connection between the two. *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023).

The first element is not disputed. The parties do not contest that Kedas engaged in protected activity under Title VII by raising concerns of gender discrimination in April 2016 at IDOT.[2] *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011). Also, there's no disagreement, looking to the second element, that constructive discharge constitutes an adverse employment action. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008) (citing *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002)). IDOT disputes, however, Kedas's assertion that he was constructively discharged in March 2021.

An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable. *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015) (citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010)). We have recognized two types of constructive discharge. *Fields v. Bd. of Educ. of City of Chi.*, 928 F.3d 622, 625 (7th Cir. 2019). Under the first form, the employee resigns because of discriminatory "working conditions even more egregious than that required for a hostile work environment claim." *Id.* The second form of constructive discharge "occurs when an employer acts in a manner that would make clear to a reasonable employee that [he] will be immediately fired if [he] does not resign." *Id.*

---

[2] Here, Kedas does not assert that any of his other activities qualified as protected activity.

Under either approach, Kedas fails to establish constructive discharge. Kedas argues that several subsequent actions—his being stripped of job duties, labeled a "cancer," repeatedly disciplined "for no reason," and having his job description altered—demonstrate that he was constructively discharged by IDOT for reporting discrimination in April 2016. These actions do not collectively demonstrate an egregious discriminatory work environment or that the "axe was about to fall" for Kedas. *Fischer*, 519 F.3d at 409.

First, Kedas has not reported any threats of violence or any form of harassment so severe that it created a work environment more egregious than a hostile work environment. We recognize that Kedas's supervisor referred to him as a workplace "cancer," but this comment was never communicated to Kedas while he worked at IDOT and was shared privately amongst the supervisors. Because Kedas's argument fails to capture this context, it cannot support his allegation that he felt mistreated by his supervisors. Smith explained that Kedas's overall insubordination and questioning of assignments had begun to affect the team, and he suggested that Kedas be transferred to a different supervisor. *See Chapin*, 621 F.3d at 678 (explaining the test of whether an act is retaliatory is objective and that context matters). Kedas is also unable to show that IDOT acted in a way that made clear that Kedas was going to be fired if he did not immediately resign. *See Fields*, 928 F.3d at 625. We have found conduct fits in this category when, for example, the employee returns to their office to find their belongings packed up and the office being used as storage. *Univ. of Chi. Hosps.*, 276 F.3d at 332. On these facts, we cannot agree with Kedas that his termination was imminent.

We conclude that no reasonable employee in Kedas's po-
sition would believe the workplace was objectively intolera-
ble. True, Kedas faced disciplinary actions, but they were not
unfounded: the record shows that Kedas continuously re-
fused supervision and faced consequences to which he did
not respond. That Kedas refused to heed management's
warnings that he needed to improve and faced continuous
reprimand did not make his working conditions objectively
intolerable—IDOT could, and indeed did, "hope that criti-
cism w[ould] lead to better performance by [Kedas]." *Fields*,
928 F.3d at 626. Though Kedas argues that he resigned due to
stress and health problems on the advice of his doctor, he has
shown no evidence that "a reasonable person would have felt
compelled to retire or quit." *Id.*

At oral argument, counsel for Kedas conceded that our cir-
cuit's case law required more than the evidence Kedas pre-
sented. (Oral Argument at 10:25–31). Without evidence that a
reasonable person in Kedas's position would believe he suf-
fered an objectively intolerable work environment, or that his
termination was imminent, no reasonable jury could have
concluded that IDOT constructively discharged Kedas. The
district court did not err in concluding Kedas's retaliation
claim in the form of constructive discharge under Title VII
fails.

### B. Retaliatory Job Assignments in 2018

Kedas also contests the district court's grant of partial
summary judgment on his retaliation claim regarding the
February job assignments in 2018. Specifically, Kedas argues
the district court erred in finding, at summary judgment, no
casual connection between his April 2016 email complaints
and IDOT's assignment of jobs below $2 million in February

No. 22-2775                                                                11

2018. Recall to survive summary judgment on his Title VII re-
taliation claim, Kedas must be able to show that (1) he en-
gaged in an activity protected by the statute; (2) he suffered
an adverse employment action; and (3) there is a causal link
between the protected activity and the adverse action. *Ander-
son v. Street*, 104 F.4th 646, 654 (7th Cir. 2024). For the reasons
we explain below, this theory of retaliation fails at causation.

To demonstrate causation in the retaliation context, Kedas
must be able to show that the protected activity was a "but
for" cause for the adverse action, meaning "the adverse action
would not have happened without the activity." *Johnson v. Ac-
centure LLP*, 142 F.4th 536, 543 (7th Cir. 2025) (quoting *Carlson
v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014)). This
may be established using direct or circumstantial evidence,
including "suspicious timing, ambiguous statements of ani-
mus, evidence other employees were treated differently, or
evidence the employer's proffered reason for the adverse ac-
tion was pretextual." *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886,
892 (7th Cir. 2024) (quoting *Rozumalski v. W.F. Baird & Assocs.,
Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). The key question is
whether Kedas presented sufficient evidence to support an in-
ference that his protected activity caused IDOT's adverse ac-
tion. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948,
959 (7th Cir. 2021).

Based on this record, Kedas maintains that a reasonable
jury could infer retaliation based on "suspicious timing and
other facts." In his appellate brief, Kedas highlights the timing
between his April 2016 email complaints and IDOT's April
2016 disciplinary action and June 2016 performance evalua-
tion. The problem with Kedas's argument, however, is that he
fails to link these decisions to IDOT's decision to assign Kedas

low-value projects in February 2018. The lack of a temporal proximity between the April 2016 events and the February 2018 decision also undercuts this argument. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009–10 (7th Cir. 2000) (timing of the adverse action is suspicious when it occurs "fairly soon after the employee's protected expression"); *cf. Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014).

Next, Kedas asks us to consider IDOT's decision in May 2018 to remove the requirement that senior resident engineers receive the most consequential projects and his supervisor's comments that he was a "cancer" as sufficient evidence for a jury to find retaliation, but the record demonstrates otherwise. In 2017, Kedas was assigned some of the most high-value projects within IDOT. During that year, however, Kedas was disciplined for his complete disregard of his supervisor's instructions on how to manage those projects, reprimanded for his continuous refusal to follow IDOT policy, and counseled on his inability to work with various contractors. These intervening events remain uncontradicted by Kedas, and he has not offered any evidence to undermine IDOT's assertions that these were the honest reasons for Kedas's job assignments in February 2018.

Lastly, Kedas relies on the comment made by his supervisor that Kedas was a "cancer" and IDOT's decision to modify his job description in May 2018 as evidence of IDOT's improper motive in this case. Kedas fails to demonstrate how these later actions show cause or evidence of pretext with respect to IDOT's decision in February 2018 to assign Kedas low-value projects. *Poullard v. McDonald*, 829 F.3d 844, 857 (7th Cir. 2016). Viewing the evidence as a whole, we find Kedas failed to present sufficient evidence of a casual chain

No. 22-2775                                                          13

between his protected activity and the adverse employment action, thus his retaliation theory regarding his February 2018 job assignments also fails.

### III. CONCLUSION

For these reasons, the judgment of the district court is AFFIRMED.